### INEZ COLE v. THE STATE.

*No. 771.   Decided January 22nd, 1896.*

**1.   Manslaughter—Defendant the Aggressor.**

If a party, though the aggressor, or entering willingly into a fight with no intent to kill during the progress of the same, suffers great bodily injury at the hands of his antagonist by means of weapons or other instruments of violence, or by great superiority of personal strength, such injury would constitute adequate cause sufficient to reduce a voluntary homicide by him to manslaughter. Penal Code, Art. 702 [597.]

**2.   Same.**

Where the defendant is shown to be the aggressor, or that he entered willingly into a fight, he cannot rely upon manslaughter unless great bodily injury has been inflicted upon him: but, a killing by him under such circumstances would be murder.

**3.   Assault With Intent to Murder.**

On a trial for assault with intent to murder, where it appeared that two fights ensued between the parties, in both of which defendant either entered willingly or was the aggressor; and, in the first fight could not have relied upon manslaughter had a homicide been committed by him, a fortiori, he should be deprived of the right to rely upon the provocation and passions aroused in such first difficulty to reduce the homicide if death had ensued from the second assault.

**4.   Same—"Cooling Time."**

On a trial for assault with intent to murder, where there were two difficulties between the parties, and there was no legal provocation arising from the first difficulty, the doctrine of "cooling time" does not apply.

APPEAL from the District Court of Robertson. Tried below before Hon. W. G. TALIAFERRO.

This appeal is from a conviction for assault with intent to murder, the punishment being assessed at imprisonment for two years in the penitentiary.

The facts are sufficiently found in the following testimony.

Mittie Batts: "I was on the picnic on April 4th, 1895, at Knapp's Lake. I got cut there by defendant. She and I talked some very vulgar talk about women, etc. Defendant got mad and picked up a chair to strike me with; it was taken from her. She then stooped down to get a knife from her stocking, when I struck her with a piece of grape-vine. She then went off. We had a fight; she began the fight. I got the best of that fight. I bit her finger and struck her head and arm with a stick. She took up a chair to hit me with, and some one took it away from her. She then went off for about three-quarters of an hour; one-half hour or more; she went towards town. After awhile she returned. She carried her hands in the folds of her dress skirts, and some one said she was coming back to make up with me. She did not

look mad. She came up to me and said, 'All you sons-of-bitches done me up awhile ago, and I will get even with you,' and struck me in the side with a razor, and cut a very deep, long gash. A razor is a deadly weapon. Dr. C. C. Garrett sewed my side. Defendant also cut my arm. When she cut me I was sitting with my left hand to my head. I was confined to my bed for some time. After defendant cut me she chased Emma Derico and Will Scott with the same razor. After defendant cut me, I got up, took a stick and struck her, but not until she had cut me."

Dr. C. C. Garrett: "About the 5th of April, I was called to see Mittie Batts. She had a cut from lower left stomach; ranged upward, quartering across her right nipple. It was a dangerous wound, and would have produced death if the instrument had not crossed the ribs. It required eighteen stitches to close that gash, and Mittie was laid up for some time. A razor, used to fight with, is ordinarily a deadly weapon."

Laura Henderson testified substantially as did Mittie Batts; she was present and saw all of both the difficulties.

Dora Gray testified substantially as did Mittie Batts and Laura Henderson, and that she was present and saw all of both difficulties.

[No brief for appellant.]

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, Judge.—The appellant in this case was tried under an indictment charging her with an assault with intent to murder, was convicted of said offense, and her punishment assessed at two years' confinement in the penitentiary; and from the judgment and sentence of the lower court, she prosecutes this appeal. It is contended by counsel for appellant, that the court should have instructed the jury more fully and explicitly on the subject of manslaughter, and consequently aggravated assault and battery; that in the first difficulty between the prosecutrix and the appellant the evidence shows a sufficient provocation to arouse the passions of the appellant to such an extent that if death had ensued it would have been manslaughter, and, therefore, in this case, death not ensuing, aggravated assault and battery. From a half to three-fourths of an hour after the first difficulty, the assault for which appellant has been convicted was made. If the appellant was an aggressor, or entered into the first fight willingly, under the facts of this case, could she rely upon the passions aroused in the first difficulty? Under certain circumstances, this may be done. What are they? If, in the first difficulty, there was inflicted upon the appellant great bodily injury, by means of weapons or other instruments of violence, or by great superiority of personal strength, and she had killed the deceased at the time, she would have been guilty of manslaughter, though she was the aggressor or entered into the fight willingly; provided, she did not do so with the intent to kill. See Penal Code, Art., 597, sub. div. 2. In this case there

35th Crim. Rep.—25.

was no great bodily injury inflicted upon the appellant. It is evident that she was either the aggressor or entered into the first difficulty will- ingly, and it makes no difference, in law, whether she be the aggressor or whether it was a mutual combat—the principle is the same. She can- not rely upon manslaughter, unless great bodily injury is inflicted upon her. Let us suppose that the appellant, after having entered into the fight willingly, had succeeded, when she reached for the knife (which was in her stocking), in killing the prosecutrix. There being no great bodily injury inflicted upon her, and she being the aggressor, or having willingly entered into the fight, she would have been guilty of murder. If, therefore, she could not have relied upon manslaughter in the first instance, if death had ensued, with greater reason would she be deprived of the right to rely upon the provocation and passions aroused in the first difficulty, in order to reduce the homicide if death had ensued from the last assault. As a corollary to this proposition, we would say, if there was no legal provocation arising from the first difficulty, the doctrine of "cooling time" does not apply. What we have said disposes of the application for a continuance, because the testimony of the absent wit- nesses relates to what transpired in the original difficulty, and is not materially at variance with the testimony in the record. The judgment is affirmed.

*Affirmed.*